# RECORD NO. 15-2188

In The

# United States Court Of Appeals
# For The Fourth Circuit

## JATINDER SHARMA;
## HAYMARKET FAST FOODS, INC.,

*Plaintiffs – Appellants,*

v.

## USA INTERNATIONAL, LLC;
## KHALIL AHMAD; MAHRAH BUTT,

*Defendants – Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA**

_____

**BRIEF OF APPELLEES
USA INTERNATIONAL, LLC AND KHALIL AHMAD**

_____

Jeffrey S. Poretz
MILES & STOCKBRIDGE P.C.
1751 Pinnacle Drive, Suite 1500
Tysons Corner, Virginia 22102
(703) 903-9000

*Counsel for Appellees*
*USA International, LLC and Khalil Ahmad*

GibsonMOORE APPELLATE SERVICES, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-2188__    Caption: Jatinder Sharma v. USA International, LLC; Khalil Ahmad; Mahrah Butt

Pursuant to FRAP 26.1 and Local Rule 26.1,

USA International, LLC and Khalil Ahmad
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
       If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____     Date: _____October 14, 2015_____

Counsel for: __USA International LLC-Khalil Ahmad__

## CERTIFICATE OF SERVICE
***************************

I certify that on ___October 14, 2015___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Mahrah Butt
6537 Quiet Hours Place
Columbia, MD 21045
mahrahbutt@yahoo.com

_____                    _____October 14, 2015_____
        (signature)                                              (date)

# Table of Contents

**Page**

Table of Authorities ................................................................................... iii

I.    Statement of the Case ......................................................................1

      a.    Background Facts .................................................................1

      b.    Plaintiffs' Damages Calculation............................................4

II.   Summary of Argument ....................................................................5

III.  Argument .........................................................................................6

      a.    Standard of Review ..............................................................6

      b.    The District Court Correctly Held that Plaintiffs' Failure to Submit Sufficient Evidence of Damages Was Fatal to Their Claims.................................................................................7

      c.    The District Court Correctly Held That The Plaintiffs Failed to Submit Sufficient Evidence Regarding the Actual Value of the Business as of May 2013 (the Time the Contract Was Made) ............8

      d.    Mr. Sharma's Testimony on the Actual Value of the Businesses Should Have Been Precluded Because He Was not Designated as an Expert, and He Could not Opine on the Value of the Businesses before He Owned It .........................................11

      e.    The Plaintiffs Failed to Submit Sufficient Evidence Regarding the Value of the Businesses Had the Alleged Misrepresentations Been True............................................13

      f.    Rule 701 of the Federal Rules of Evidence Does not Permit Mr. Sharma to Opine on the Value of the Businesses Had the Alleged Misrepresentations Been True................................15

IV.   Conclusion ....................................................................................19

Certificate of Compliance

Certificate of Filing and Service

# Table of Authorities

**Page(s)**

**Cases:**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ...............................6

*Celotex Corp v. Catrett*,
  477 U.S. 317 (1986) ............................................................................6

*Evaluation Research Corp. v. Alequin*,
  247 Va. 143, 439 S.E.2d 387 (1994) ........................................... 6-7

*Glenn v. Trauben*,
  70 Va. Cir. 446 (Va. Cir. Ct. 2004) ................................................7

*Hirst v. Inverness Hotel Corp.*,
  544 F.3d 221 (3rd Cir. 2008) ...........................................................16

*Hoffman v. Vecchitto (In re Vecchitto)*,
  235 B.R. 231 (Bankr. D. Conn. 1999) ...............................................8

*Jerden v. Amstutz*,
  430 F.3d 1231 (9th Cir. 2005) .........................................................18

*Lifewise Master Funding v. Telebank*,
  374 F.3d 917 (10th Cir. 2004) ........................................................17

*Long & Foster Real Estate, Inc. v. Clay*,
  231 Va. 170, 343 S.E.2d 297 (Va. 1986) .........................................7

*McMahan v. International Ass'n of Bridge*,
  964 F.2d 1462 (4th Cir. 1992) .........................................................13

*Patel v. Anand, LLC*,
  264 Va. 81, 564 S.E.2d 140 (Va. 2002) .......................................7, 11, 13, 14

*Reynolds v. Reliable Transmissions, Inc.*,
   No. 3:09-cv-238, 2010 WL 2640065 (E.D. Va. June 29, 2010) ....................7

*Richmond Auth. v. McDevitt St. Bovis, Inc.*,
   256 Va. 553, 507 S.E.2d 344 (1998) .............................................................6

*Signature Flight Support Corp. v. Landow Aviation Limited P'Ship*,
   No. 1:08-CV-955(JCC), 2009 WL 2762146 (E.D. Va. 2009) ...............16, 17

*TLT-Babcock, Inc. v. Emerson Elec. Co.*,
   33 F.3d 297 (4th Cir. 1994) ........................................................................16

*United Co. v. Keenan*,
   No. 1:06-CV-00071, 2007 U.S. Dist. LEXIS 88049
   (W.D. Va. Nov. 30, 2007) .............................................................................8

*United States v. Garcia*,
   413 F.3d 201 (2d Cir. N.Y. 2005) ...............................................................16

*United States v. Perkins*,
   470 F.3d 150 (4th Cir. 2006) .......................................................................17

*Wall v. Commissioner*,
   T.C. Memo. 2001-75 (T.C. 2001) .................................................................8

*Woollard v. Gallagher*,
   712 F.3d 865 (4th Cir. 2013) .........................................................................6

**Rules:**

Fed. R. Civ. P. 56(c).........................................................................................6

Fed. R. Evid. 701 ....................................................................................*passim*

Fed. R. Evid. 702 .......................................................................12, 13, 19

Fed. R. Evid. 702, advisory committee note........................................................19

**Other Authorities:**

S. PRATT, ET AL., VALUING SMALL BUSINESSES AND
PROFESSIONAL PRACTICES
     236 (3d ed. 1998)..............................................................................8

S. PRATT, ET AL., VALUING A BUSINESS, THE ANALYSIS AND
APPRAISAL OF CLOSELY HELD COMPANIES,
     46 (4th ed. 2000)..............................................................................8

I.    **Statement of the Case.**

a.    **Background Facts.**

From late 2012 until November 2013, Defendant USA International, LLC ("USA International") operated a Checkers restaurant and Auntie Anne's Pretzels (collectively, the "Businesses") within a Wal-Mart located in Haymarket, Virginia. (JA 13).   USA International is believed to be the first company to operate a Checkers inside of a Wal-Mart location. (JA 70-71).  Wal-Mart policy prohibits the opening of a fast-food establishment without prior fast-food restaurant experience. (JA 71).    Defendant Khalil Ahmad ("Mr. Ahmad") spent approximately $500,000.00 to open the Businesses. (JA 84).

In early 2013, Muhammad Khan ("Mr. Kahn"), a non-party, introduced plaintiff Jatinder Sharma ("Mr. Sharma") to defendant Mr. Ahmad.  (JA 13).  Mr. Khan provided accounting services for Mr. Sharma and plaintiff Haymarket Fast Foods Inc. ("Haymarket") during the relevant times at issue. (JA 98-88).  Mr. Khan also served as the accountant for Mr. Ahmad and USA International during this period. (JA 465).  After learning about the Businesses from Mr. Khan, and even though he did not have prior fast-food restaurant experience (JA 170), Mr. Sharma sought to purchase the Businesses from the defendants. (JA 13).

Mr. Sharma thereafter reached a tentative deal with Mr. Ahmad and asked Mr. Khan to draft a sale agreement that included a purchase price of $720,000.00 for the Businesses and a contingency pertaining to monthly sales. (JA 154-155). On March 23, 2013, Mr. Sharma, in his individual capacity and without inspecting USA International's books or profit/loss statements, executed the Conditional Asset Purchase Agreement (the "Preliminary Agreement") committing to purchase the Businesses from USA International for $720,000.00. (JA 22-27, 57). The closing on the sale of the Businesses was contingent upon, among other things, Checkers and Auntie-Anne's combined monthly sales totaling "at least" $90,000.00 during the last two completed months prior to closing. (JA 22, 25).

On May 21, 2013, after meetings with Checkers' representatives, the parties modified the terms of the Preliminary Agreement and executed a second "Conditional Asset Purchase Agreement" (the "Sales Agreement"), which is the operative document in this case. (JA 14, 22-33). The parties only modified two terms of the Preliminary Agreement: (1) the purchase price was reduced from $720,000.00 to $600,000.00, (JA 29) and (2) the $90,000.00 minimum sales contingency was removed. (JA 31).

Before Mr. Sharma formed Haymarket, Checkers and Auntie-Anne's corporate offices approved the sales transaction for the amount of $600,000.00. (JA 104-05). Mr. Sharma obtained a personal loan commitment from BB&T, and

at some point before the closing date of October 14, 2013, Mr. Sharma assigned the Sales Agreement to Haymarket. (JA 107). According to Mr. Khan (the parties' mutual accountant), the sales price of $600,000.00 was commercially reasonable, and in Mr. Khan's opinion, the Businesses could have reasonably been sold for a higher or lower purchase price depending on the interest of the buyer. (JA 77).

Mr. Sharma commenced the underlying action less than 8 weeks after purchasing the Businesses. (JA 13). The plaintiffs contend that the alleged fraud centers on certain financial data provided to Mr. Sharma after the parties executed the Preliminary Agreement, but before the execution of the Sale Agreement. Mr. Khan provided Mr. Sharma with two of USA International's financial statements for March and April 2013 (the "Profit/Loss Statements"). (JA 14-15). The plaintiffs contend that the gross sales figures found in the Profit/Loss Statements were exaggerated. (JA 17-18). The gross sales figures are the only information contained in the Profit/Loss Statements that the plaintiffs contend are fraudulent. (JA 175).

After the closing, plaintiff Haymarket alleged that it had difficulty replicating USA International's sales history. (JA 17). However, the plaintiffs acknowledged that many factors, unrelated to any alleged fraud, could have adversely impacted Haymarket's profitability. (JA 117-18, 127). These factors

3

included (a) severe weather during Haymarket's first few months of operation, (b) the reduced efficiency of the corporation's employees, and (c) the shutdown of the federal government. (JA 117-18, 127). Notwithstanding the events that could have impacted Haymarket's profitability, Haymarket has consistently turned a profit. (JA 175).

### b. Plaintiffs' Damages Calculation.

The plaintiffs sought compensatory damages in the amount of $273,645.96. (JA 204). However, plaintiffs' calculation of those damages has evolved throughout this litigation. In their answers to defendants' first set of interrogatories, the plaintiffs calculated the damages by taking the difference between the sales price ($600,000.00) and the alleged actual value of the Businesses ($360,000.00), and added their closing costs of $33,645.96. (JA 195-96). In their answers, the plaintiffs failed to explain how they calculated the actual value of the Businesses. (JA 195-96).

On August 8, 2014, the plaintiffs served their amended answers to defendant's interrogatories attempting to explain how they calculated the actual value of the Businesses. (JA 953-54). First, the plaintiffs explained that they took their own weekly sales of $10,000.00 and multiplied it by 36 – a formula allegedly used to determine the sales price – giving a purported value of $360,000.00. (JA 954-55). The second method the plaintiffs used was to use its own profit/loss

statements that were generated after they acquired the Businesses and calculated an average EBITDA – Earning Before Interest, Taxes, Depreciation and Amortization – of $7,369.00 and multiplied that number by 48 (asserting that it would take plaintiffs 4 years to obtain a return on its investment).[1]  (JA 953-54).  The plaintiffs failed to consider any other method to value the Businesses. (JA 122).

## II.    <u>Summary of Argument.</u>

In Virginia, fraud damages are measured by the difference between the actual value of the property at the time of contract and the value that the property would have possessed had the fraudulent representations been true.  The plaintiffs failed to prove their damages because (1) the plaintiffs' evidence of the actual value of the property at the time of contract was based on nothing more than speculation and was not based upon any acceptable business valuation method, and (2) the plaintiffs' only evidence relating to the value of the property had the fraudulent representations been true was the sales price.

Moreover, the plaintiffs failed to identify plaintiff Jatinder Sharma as an expert, and Mr. Sharma should have been precluded from opining on the value of the Businesses because the applicable date of the valuation was a date before the plaintiffs owned the Businesses and because his purported lay testimony was not

---

[1] In its amended answers, the plaintiffs incorrectly identified EBITDA as <u>Income Tax</u>, Depreciation and Amortization.  (JA 954).

based upon his direct perception, but rather was based upon the defendant USA International's Profit/Loss Statements. In addition, the plaintiffs failed to provide any expert testimony on the valuation issues.

## III.  Argument.

### a.  Standard of Review.

A district court's award of summary judgment is reviewed de novo and in the light most favorable to the non-moving party. *Woollard v. Gallagher*, 712 F.3d 865, 873 (4th Cir. 2013). A district court enters summary judgment when the evidence in the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of some alleged factual dispute between the parties does not prohibit the district court from entering summary judgment; instead, there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Disputed material facts are "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotations omitted).

When a plaintiff asserts a cause of action alleging fraud, the plaintiff bears the burden of proving by clear and convincing evidence each of the elements of fraud. *Richmond Auth. v. McDevitt St. Bovis, Inc.,* 256 Va. 553, 557-58, 507 S.E.2d 344, 346 (1998) (quoting *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148, 439

S.E.2d 387, 390 (1994)).  This is because fraud is generally considered a disfavored tort under Virginia law.  *Glenn v. Trauben*, 70 Va. Cir. 446 (Va. Cir. Ct. 2004) (explaining that punitive damages, like fraud, are generally disfavored by Virginia courts).

### b.    The District Court Correctly Held that Plaintiffs' Failure to Submit Sufficient Evidence of Damages Was Fatal to Their Claims.

To prove a fraud claim, a plaintiff must establish it has suffered damages, among other things, by clear and convincing evidence.  *Reynolds v. Reliable Transmissions, Inc.*, No. 3:09-cv-238, 2010 WL 2640065 (E.D. Va. June 29, 2010). In Virginia, fraud damages are measured by "the difference between the actual value of the property at the time the contract was made and the value that the property would have possessed had the fraudulent representations been true." *Patel v. Anand, LLC*, 264 Va. 81, 86-87, 564 S.E.2d 140, 143-44 (Va. 2002); *see also Long & Foster Real Estate, Inc. v. Clay*, 231 Va. 170, 176, 343 S.E.2d 297, 300 (Va. 1986) (explaining that the measure of fraud damages was the difference between the value of the note had the representations been true and the value of the note she actually received).  In other words, the plaintiffs were required to prove (1) the actual value of the property at the time contract was made, and (2) the value that the Businesses had if the sales figures in the Profit/Loss Statements were accurate.  The plaintiffs failed to do so, because as the District Court stated, the plaintiffs' proof of damages was based upon little more than speculation.

c.  **The District Court Correctly Held That The Plaintiffs Failed to Submit Sufficient Evidence Regarding the Actual Value of the Business as of May 2013 (the Time the Contract Was Made).**

There are three accepted methods for valuing a business: the income approach, the market approach, and the asset-based approach. *See United Co. v. Keenan*, No. 1:06-CV-00071, 2007 U.S. Dist. LEXIS 88049 (W.D. Va. Nov. 30, 2007) (citing S. PRATT, ET AL., VALUING A BUSINESS, THE ANALYSIS AND APPRAISAL OF CLOSELY HELD COMPANIES, 46-47 (4th ed. 2000)).  "In general, a market-based [approach] concentrates on a company's historical performance measures and, by reference to guideline public company multiples, attempts to determine the price at which the stock of a company with those performance measures would trade."  *Wall v. Commissioner*, T.C. Memo. 2001-75 (T.C. 2001).  "An income-based [approach], by contrast, is more forward looking; it attempts to predict, and then determine the present value of, all future returns an investor could expect to receive from an investment in the subject company." *Id.* (citing PRATT, ET AL., VALUING SMALL BUSINESSES AND PROFESSIONAL PRACTICES 236-240 (3d ed. 1998)).   An asset-based valuation, which is not implicated in this case, attempts to find the fair market value of the net assets of the company. *Hoffman v. Vecchitto (In re Vecchitto)*, 235 B.R. 231, 235 (Bankr. D. Conn. 1999).

The plaintiffs asserted that the actual value of the Businesses at the time the Sales Agreement was executed was approximately $360,000.00. (JA 195-96). The District Court correctly noted that there was "conflicting evidence in plaintiffs' own accounts of what methods were used to calculate damages." (JA 1066). Indeed, on July 7, 2014, plaintiff Haymarket submitted its answers to defendants' first set of interrogatories alleging damages in the amount of $273,645.96, calculated by taking the sales price ($600,000.00) plus the incidental costs of purchasing the Businesses ($33,645.96) and subtracting the alleged actual value of the Businesses ($360,000). (JA 195-96). The District Court correctly noted that the plaintiffs did not explain how they calculated the actual value of the Businesses. (JA 1066).

Approximately one month after submitting their answers to defendants' interrogatories, plaintiffs amended their answers attempting to explain that they used two methods to determine the actual value of the Businesses. (JA 953-54). First, the plaintiffs calculated the actual value of the Businesses by multiplying the plaintiffs' own weekly sales of $10,000 by 36. (JA 953-54). The District Court noted that the plaintiffs' "key assumption underlying plaintiffs' $360,000.00 valuation is the notion that the Checkers restaurant must have had the same amount of sales under USA International's ownership as under Haymarket's". (JA 1066-67). Therefore, the plaintiffs not only incorrectly used their sales from November 2013 through May 2014 as a basis for calculating the actual value of the

9

Businesses as of May 2013, but also failed to use any of the generally accepted methods of business valuation and failed to offer sufficient evidence that there methods were reliable. (JA 1069).

Moreover, at Mr. Sharma's second deposition on September 14, 2014, Mr. Sharma testified that he did not know why he used a multiple of 36 as opposed to any other multiple. (JA 121). Again, it was mere speculation on why a multiple of 36 was appropriate under these circumstances.

The plaintiffs also provided a second method to calculate the actual value of the Businesses – namely taking the plaintiffs' own EBITDA – and multiplying that amount by 48. (JA 121). The plaintiffs again used Haymarket's own profit and loss statements that showed an average EBITDA of $7,369.00 per month and speculated that it would take Mr. Sharma four years to realize a return on his investment. (JA 121, 447). In fact, Mr. Sharma stated that the plaintiffs' valuation was mainly based upon Haymarket's profit and loss statements, and other than the two valuations methods that they used to calculate the value of the Businesses, did not consider any other business valuation method. (JA 122).

The plaintiffs' calculations of the actual value of the Businesses are based upon nothing more than speculation and do not use any of the three accepted methods for valuing a business. Instead, the plaintiffs' created their own valuation methodology based upon Haymarket's November 2013 through May 2014 profit

and loss statements. This value, however, provides no indication of the actual value of the Businesses at the time of contracting (May 2013), which according to Virginia law, is the applicable date for determining the actual value of the Businesses, or even at the time of closing (November 2013). Instead, the plaintiffs' EBITDA calculation provides a separate arbitrary and irrelevant value – that of the Businesses one year after the contract was executed, under new management, and under different economic conditions, with no facts to support the multiples that they used. The plaintiffs' valuation flies in the face of "established principle[s]" rooted in Virginia law, and is not evidence of the actual value of the Businesses at the time of the execution of the contract. *Patel*, 264 Va. at 86-7, 564 S.E.2d at 143-44.

Since the plaintiffs failed to satisfy their burden, the District Court was correct in granting summary judgment in favor of the defendants.

> **d. Mr. Sharma's Testimony on the Actual Value of the Businesses Should Have Been Precluded Because He Was not Designated as an Expert, and He Could not Opine on the Value of the Businesses before He Owned It.**

The valuation of any business, but particularly the valuation of privately held companies for which no market price has ever been established, is well-developed and complex, with established standards and practices and based upon the three accepted methods of valuing a business. Forming an opinion as to value of a business involves a variety of accounting-based predications and future projections which requires specialized knowledge.

The plaintiffs failed to disclose any experts in this case, but instead, proposed to have Mr. Sharma provide lay testimony as to the actual value of the Businesses as of May 2013, approximately six (6) months before Haymarket acquired the Businesses. However, Mr. Sharma did not have the necessary background or knowledge to render such testimony. Mr. Sharma is not an accountant. In 1995, he graduated in India with a degree in mechanical engineering. (JA 248). From 1995-1999, Mr. Sharma worked in India as a sales and service engineer where he was "responsible for managing their sales." (JA 249). Specifically, he sold welding electrodes. (JA 250). Mr. Sharma subsequently immigrated to the United States in 1999 and changed his line of business to computers working as a networking engineer. (JA 249-250). Thereafter, he purchased and operated 7-Eleven stores. (JA 252). Before acquiring the Businesses, Mr. Sharma had never owned a fast-food establishment. (JA 170).

The Federal Rules of Evidence were amended in 2000 adopting specific, more stringent requirements for expert testimony and hardening the line between lay and expert opinions. It is self-evident that an opinion involving a business valuation before owning that business requires specialized knowledge that falls squarely within the grasp of Rule 702 of the Federal Rules of Evidence.

Here, the plaintiffs failed to designate an expert who could value the Businesses as of May 21, 2013. Without the benefit of a reliable expert-based methodology, Mr. Sharma's lay opinion testimony is inherently unreliable, and plaintiffs should have been precluded from rendering Rule 702 expert testimony under the guise of Rule 701 lay testimony.[2]

### e. The Plaintiffs Failed to Submit Sufficient Evidence Regarding the Value of the Businesses Had the Alleged Misrepresentations Been True.

As stated above, in Virginia, the measure of damages for fraud is based on the difference between the actual value of the property at the time the contract was made and value of the property had the alleged misrepresentations been true. *Patel*, 264 Va. at 86-7, 564 S.E.2d at 143-44. For purposes of its ruling, the District Court assumed without deciding that the sales price constituted sufficient evidence of the value of the Businesses had the alleged misrepresentations been true.

However, in Virginia, the sales price of property is not synonymous with the value of the property had the alleged misrepresentations been true. In *Patel v. Anand*, the Virginia Supreme Court held that the plaintiff failed to present evidence of the actual value of the property had the misrepresentations been true

---

[2] While the district court did not grant summary judgment on this issue, this Court has held that a district court can be affirmed for getting the correct result on summary judgment but based upon different reasons. *See McMahan v. International Ass'n of Bridge*, 964 F.2d 1462, 1466-68 (4th Cir. 1992).

(a lease which would have had clear title) and the value of the ground lease that it actually received  (a ground lease with a cloud on title).  264 Va. 81, 564 S.E.2d 140.

The issue on appeal in *Patel* was only whether the plaintiff presented sufficient evidence that would permit the jury to conclude that it suffered damage. *Id*. at 86.  Patel argued that the plaintiff failed to provide sufficient evidence of damages because the plaintiff did not show the difference in the value of the ground lease had the misrepresentations been true and the value that it actually received.  *Id.*  Instead, the plaintiff relied on the sales price of the ground lease ($900,000.00) as its evidence, and the amount of offers that prospective purchasers made for the ground lease.  *Id.*

 In applying the Virginia standard for fraud damages, the Virginia Supreme Court concluded that the plaintiff failed to present evidence of the value of the ground lease had the misrepresentations been true – even though the plaintiff submitted evidence of the sale price.  *Id.* at 87.  *Patel*, therefore, stands for the proposition that the sales price is not synonymous with the value of the property had the misrepresentations been true when determining fraud damages.  Otherwise, the Virginia Supreme Court would have concluded that the plaintiff submitted sufficient evidence to establish the value.

14

As the sales price was the only evidence that the plaintiffs submitted in this case, the District Court should have concluded that the plaintiffs failed to submit sufficient evidence of the value of the Businesses had the alleged fraudulent misrepresentations been true.

### f.    Rule 701 of the Federal Rules of Evidence Does not Permit Mr. Sharma to Opine on the Value of the Businesses Had the Alleged Misrepresentations Been True.

During the hearing on summary judgment, the plaintiffs' counsel affirmed that they intended to offer the lay testimony of Mr. Sharma to establish the value of the Businesses had the alleged misrepresentations been true. Specifically, plaintiffs' counsel stated that Mr. Sharma would testify that the value of the Businesses was the sale price of $600,000 and that the sale price was based on Mr. Sharma using the defendants' (and not the plaintiffs') Profit/Loss Statements that were provided to him in April and May 2013. Because Mr. Sharma did not have personal knowledge of the components and materials that made up the defendant's Profit/Loss Statements, did not himself create the Profit/Loss Statements, was not an owner of the Businesses at the time the Profit/Loss Statements were created, and alleges that gross sales in the Profit/Loss Statements were exaggerated, Mr. Sharma's conclusions required specialized knowledge. Mr. Sharma's proffered lay testimony should have been precluded by the District Court.

To qualify as lay testimony under Rule 701 of the Federal Rules of Evidence, the testimony must be based on the "perception of the witness." This reflects a particular emphasis on the personal knowledge requirement that is implicit throughout the Federal Rules of Evidence. *See Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 225-26 (3rd Cir. 2008) (discussing and implementing personal knowledge requirement of Rule 701). In fact, a witness who rests his opinion on information supplied by others does not comport with the requirements of lay opinion. *TLT-Babcock, Inc. v. Emerson Elec. Co.*, 33 F.3d 297, 400 (4th Cir. 1994) (noting that testimony which rests on statements of others lacks the requisite firsthand knowledge requirement). Whereas an expert can rely on data supplied by others, a lay witness can call only on personal experience and personally observed facts. *United States v. Garcia*, 413 F.3d 201, 211 (2d Cir. N.Y. 2005).

With this framework in place, *Signature Flight Support Corp. v. Landow Aviation Limited P'Ship*, No. 1:08-CV-955(JCC), 2009 WL 2762146 (E.D. Va. 2009) is instructive on the limitations of lay testimony. In *Signature Flight*, the plaintiff designated an expert witness who had produced a report and represented that the expert witness would "testify as to the facts and on the basis of information contained within his expert reports and the materials attached thereto." *Id.* at *2. At trial, however, the plaintiffs did not produce the expert witness, but in his place

offered the Chief Operating Officer to testify on the value of damages.  In holding that the testimony did not qualify as lay testimony, the court reasoned that the witness did not have personal knowledge of the underlying data.  *Id.* at *4.  The plaintiff merely stated that the witness "is familiar with the financials of [plaintiff] and who has a reasonable basis for looking at numbers on an aircraft that were provided by [defendant]."  *Id.*  However, this was not enough for the court.  There, as here, "[t]he rules of evidence clearly 'forbid [ ] the admission of expert testimony dressed in lay witness clothing.'"  *Id.* at *5 (quoting *United States v. Perkins*, 470 F.3d 150, 156 (4th Cir. 2006).

Here, the proffered testimony of Mr. Sharma is no different. As in *Signature Flight Corp.*, the proffered testimony fails under Federal Rules of Evidence 701 because Mr. Sharma lacks personal knowledge of the underlying data.  That alone disqualifies Mr. Sharma from testifying on the subject at issue under Rule 701 of the Federal Rules of Evidence.

In addition, Mr. Sharma's proffered testimony would only be allowed if he was disclosed as an expert, or if his testimony did not require any specialized knowledge and could be reached by any ordinary person. *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 928-29 (10th Cir. 2004).  In that vein, Mr. Sharma's methodology, which remains unclear, is anything but a straightforward calculation that might otherwise fall within Rule 701 opinion testimony.  To the contrary, to

17

accept Mr. Sharma's testimony requires specialized knowledge, on (1) which valuation is appropriate under the circumstances, (2) how to calculate the "multiplier" and why that particular multiplier was used, and (3) what discount to apply. Then, depending on the appropriate methodology, additional assumptions which are beyond the capability of an untrained "ordinary person" are required including, but not limited to, how to project future revenues, how to evaluate comparable companies, what companies are "comparable," what factors to include in the "discount," how those factors are to be weighted, and how they translate into a numerical discount. As Mr. Sharma has acknowledged, he has not considered other methodologies, other than speculating on multipliers, or what the effect such changes would have on the valuation.

As a trained mechanical engineer and general businessman, Mr. Sharma's valuation opinion testimony is hardly reliable. But more fundamentally, arriving at a market multiple valuation does not "resul[t] from a process of reasoning familiar in everyday life." Fed. R. Evid. 701 advisory committee's note. Instead, it requires a person with extensive background in such valuations, one who can look at the industry and draw inferences from the facts, a task more properly reserved for experts. *See, e.g., Jerden v. Amstutz*, 430 F.3d 1231, 1240 (9th Cir. 2005).

Where opinions are not based solely on the witness's direct perception from experience with the business, but rather the application of an unidentified valuation method supposedly gleaned from Mr. Sharma's general business background, such testimony is outside the scope of Rule 701 and the witness must qualify as a Rule 702 expert. Mr. Sharma was not designated as an expert and cannot offer lay testimony on the value of the Businesses at a time for which he was not personally involved. Rule 701 was amended in 2000 specifically to prevent litigants from doing what plaintiffs attempt to do here – evade the reliability requirements of Rule 702 "through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 702 advisory committee's note. Such testimony therefore should have been excluded.

## IV.    <u>Conclusion.</u>

For all of the above reasons, the defendants respectfully request the Court to affirm the decision of the United States District Court for the Eastern District of Virginia granting Summary Judgment in favor of the defendants.

<u>/s/ Jeffrey S. Poretz</u>
Jeffrey S. Poretz
MILES & STOCKBRIDGE P.C.
1751 Pinnacle Drive
Suite 1500
Tysons Corner, Virginia 22102
(703) 903-9000

*Counsel for Defendants – Appellees*
  *USA International, LLC and Khalil Ahmad*

19

## **Certificate of Compliance**

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> this brief contains <u>4,309</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

Dated: January 14, 2016          <u>/s/ Jeffrey S. Poretz          </u>
                                 Jeffrey S. Poretz

## <u>Certificate of Filing and Service</u>

I hereby certify that on January 14, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users. I additionally certify that I caused a copy of the foregoing to be served, via United States Mail, first class, postage pre-paid to Defendant Mahrah Butt, addressed as follows:

> Mahrah Butt
> 1202 Westerlee Place
> Apartment 2A
> Cantonsville, MD  21228

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Melissa A. Dockery
Melissa A. Dockery
GIBSON MOORE APPELLATE SERVICES, LLC
P.O. Box 1460
Richmond, VA  23218
(804) 249-7770
